DiRenzo, Appellant, v. Cavalier, Jr., Appellee.*

(No. 3809—Decided February 1, 1956.)

*Mr. Morris Mendelssohn* and *Messrs. Falls, Hazel & Kerr,* for appellant.

*Mr. William E. Pfau* and *Mr. William E. Pfau, Jr.,* for appellee.

Doyle, J. This action was commenced in the Common Pleas Court of Mahoning County to recover damages for personal injury.

The facts creating the issues may be briefly stated as follows:

On May 16, 1953, Dominic DiRenzo, the injured person, attended a wedding reception held in a ballroom located in a building in Youngstown, owned by the local chapter of the Sons

---

*Judgment affirmed, 165 Ohio St., 386.

of Italy, a fraternal society. He was allegedly injured when struck by the falling of a large section of the ceiling, while in attendance.

The building had been rented or leased by the defendant, Leonard A. Cavalier, Jr., for a period of over twenty years, and, at the time of the reception in question, he held it under a five-year lease, dated August 25, 1950, granted him by the Sons of Italy society.

In January of 1953, Cavalier, by written instrument, agreed with a Mr. and Mrs. Conti "to furnish the * * * ballroom for the purpose of holding a wedding reception on Saturday, May 16, 1953, between the hours of 7:30 and 12 o'clock midnight," for the consideration of $75.

This agreement further stated:

"The party of the second part (the Contis) further agrees to have our regular officer of the law on duty during the party at a fifteen * * * dollar cost, and will be responsible for and agrees to pay for any damage occurring in or about the ballroom during the reception or while preparing for it. * * * The party of the second part also has the privilege of using the checkrooms, provided they employ and pay for our regular checkroom attendants at four * * * dollars each."

Among the terms of the lease from the Sons of Italy to Cavalier, the following provision appears:

"The lessee further agrees to have a janitor in charge of said premises at all times at his own expense."

From the evidence, it further appears that, at the time of the reception, a manager of the property was present, whose duties it appears were to open the doors and turn on the lights, and, presumably, after the reception was over, to turn out the lights and close the premises for the night.

The plaintiff, in his amended petition, charged the defendant with negligence in the following respects:

"1. In carelessly and negligently failing and neglecting to keep said premises, including the ceiling, in good repair.

"2. In carelessly and negligently failing and neglecting to keep said premises and appurtenances, including the ceiling, in a safe and healthy condition.

"3. In carelessly and negligently failing and neglecting to maintain said premises and appurtenances, including the ceiling, in a careful, safe and proper manner.

"4. In carelessly and negligently maintaining the said ceiling of said premises in a defective, dangerous and unsafe condition, as aforesaid.

"5. In carelessly and negligently failing and neglecting to inspect said premises, including the said ceiling.

"6. In carelessly and negligently failing and neglecting to repair said ceiling of said premises.

"7. In carelessly and negligently failing and neglecting to warn the said plaintiff of the defective, dangerous and unsafe condition of the said ceiling, as aforesaid.

"8. That said defendant was negligent in failing to take reasonable precautions to prevent the plaster from falling and injuring plaintiff, as aforesaid."

At the conclusion of the plaintiff's case, the court, in directing a verdict for the defendant, observed:

"I don't know whether it is a lease or a license or whatever it is. If it is a license, you run smack into the fundamental rule as to licenses; there is no recovery unless there was an open, dangerous condition known to the licensor or obvious. And here is a case where plaster didn't just fall here; here is a case where the lath came loose from the rafters, from the joists, and that isn't open and obvious at all. That is a hidden defect."

From the judgment for the defendant, entered upon the directed verdict, appeal has been taken to this court on questions of law. The assignments of error charge, in substance, that the court erred in failing to apply the proper rules of law to the facts shown to exist.

The traditional formula used in this state, for many years, applicable to persons injured on leased premises, appears in *Burdick* v. *Cheadle*, 26 Ohio St., 393. It is to the effect that a landlord, out of possession, owes no legal duty in failing to make premises safe and secure as a place of resort for guests or customers of a tenant, even where knowing that the premises were intended to be used for specific purposes which might cause injury to the tenant's patrons or guests. Paramount in the

many cases following this doctrine is the question: Has the landlord retained the right of occupation or control of the premises?

"1. Occupation and control of premises by a party are attributes of their ownership. Ordinarily, one of those attributes is necessary as a basis for liability of such party for personal injuries resulting from the condition of such premises." *Cooper* v. *Roose,* 151 Ohio St., 316, 85 N. E. (2d), 545.

And see: *Berkowitz* v. *Winston,* 128 Ohio St., 611, 193 N. E., 343; *Ripple* v. *Mahoning National Bank,* 143 Ohio St., 614, 56 N. E. (2d), 289.

The cases cited above all refer to the relationship of landlord and tenant. In the case here under discussion, can we say that such a relationship is established as a matter of law? In other words, placing the defendant, Cavalier, in the legal position of landlord because his rights, duties and liabilities were those of a landlord, since he had occupied and controlled the premises for more than twenty years, can it be said as a matter of law that the Contis were tenants or subtenants, or were they but the holders of a license to hold a wedding reception?

"* * * A license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further, whereas a lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms.

"Whether an instrument is a license or a lease depends generally on the manifest intent of the parties gleaned from a consideration of its entire contents." 32 American Jurisprudence, Landlord and Tenant, Section 5, in part.

Of interest are the headnotes which condense the opinion in the case of *Quinn* v. *Strauss,* 255 App. Div., 886, 7 N. Y. Supp. (2d), 833, affirmed in 280 N. Y., 643, 20 N. E. (2d), 1012. They are:

"1. In action by member of dancing group against lessor of dance studio and director to whom studio had been let to recover for injuries caused by a defect in the floor boards, whether the lessor had parted with possession and control of the premises * * * so as to be released of liability for maintenance

and repair thereof was for jury where studio was let for no more than a part of a day.

"2. Where a dance studio was let to a director of a dancing group for no more than part of a day, a finding that the letting did not involve such element of permanency, exclusiveness, and completeness as would relieve the lessor of liability to a member of a dancing group injured by a defect in the floor boards would be authorized."

It is the rule in New York, similar to that in Ohio, that "Liability in tort is an incident to occupation or control." *Cullings* v. *Goetz*, 256 N. Y., 287, at p. 290, 176 N. E., 397.

While other cases outside Ohio (we have found none in this state) might be cited in support of the rule adopted in the New York case cited above, we believe that case approaches most directly the case here under consideration.

We are of the opinion, and so decide, that it was for the jury to say whether the Contis and their reception guests were occupying the hall, on the fateful evening, under a license or a lease. The finding of either legal relationship, however, would be a sufficient predicate for recovery.

If the Contis were using the premises under a license (for which $75 was paid), liability would attach to Cavalier for injury to the plaintiff, if he (Cavalier) knew or reasonably should have known from reasonable inspection that the premises were in such condition as to likely cause injury to the persons present by virtue of the license. Liability for negligence does not, under these circumstances, depend on title. Cavalier, the lessee of the Sons of Italy, may be held liable for an injury resulting from his negligence in respect to the building which was under his control and possession, even though he was not the owner. See: 32 American Jurisprudence, Landlord and Tenant, Section 818.

If under the facts of this case it should be determined that the Contis were subtenants rather than licensees, another rule of law arises. It is: Where one who has possession and control of a building leases or subleases the premises, or a part thereof, and knows, or reasonably should know; in the exercise of ordinary care, that there are defects in the building or con-

ditions thereof likely to cause injury, and that the sublessee's purpose is to open and use the premises for a wedding reception, to which numbers of persons have been or are to be invited, and the circumstances and length of time of the rental are such that the tenant cannot be reasonably expected to guard against the defects, he (the lessor) may be liable to such persons who are lawfully upon the premises, in a negligence action for consequent injuries.

It is obvious in the instant case that the short occupation of the premises (four and one-half hours) made it practically impossible for the Contis to examine into the safety of the building, and such safety of necessity was required to be left to Cavalier, who was at all times familiar with the building and its condition and the use to which the premises were to be put. See opinion of Holmes, J., in *Oxford* v. *Leathe,* 165 Mass., 254, 43 N. E., 92.

This same thought was expressed by Taft, J., in *Witherspoon* v. *Haft,* 157 Ohio St., 474, at p. 485, 106 N. E. (2d), 296. It is:

"In the instant case, the evidence does not require a finding as a matter of law that the school authorities knew of the hazard involved, as did the lessee in *Burdick* v. *Cheadle* * * *. Likewise, the evidence would justify a finding that the school, in the few hours between the erection of the bleachers by defendants and the game, did not have an opportunity to learn of or guard against that hazard in any way comparable to the opportunity which defendants had had from their years of familiarity with this type of bleachers. We do not therefore have a situation where, after actual knowledge of that hazard, the occupier of the premises invites someone onto those premises and thereby knowingly exposes his invitee to such a hazard."

It is the conclusion of the members of this court that the trial court, in the instant case, committed error prejudicial to the rights of the plaintiff in directing a verdict and entering judgment for the defendant. The judgment will therefore be reversed and the cause remanded for a new trial.

In view of the judgment of the Court of Appeals of the Seventh Appellate District in the case of *Margaret DeRose* v.

*Leonard A. Cavalier, Jr.,* No. 3587, Mahoning County, which we find to be in conflict with the judgment to be rendered in the instant case, we *sua sponte* certify this case to the Supreme Court of Ohio for final determination.

*Judgment reversed and cause remanded.*

STEVENS, P. J., and HUNSICKER, J., concur.

STEVENS, P. J., HUNSICKER and DOYLE, JJ., of the Ninth Appellate District, sitting by designation in the Seventh Appellate District.