Taft, J.
The first question raised is whether the relationship between defendant and plaintiff’s parents was that of landlord and tenant. On this question, it is appellants’ contention that plaintiff’s parents were not tenants of the “dwelling” which they occupied but were instead licensees in that dwelling for a consideration, or lodgers therein as distinguished from tenants thereof.
In considering this problem, it may be observed at the outset that this contention was apparently made as an afterthought. Thus, in the plaintiff’s father’s petition, it is alleged that, at the time of the occurrence claimed to have resulted in injuries to plaintiff, plaintiff “resided with his parents, who were and are now tenants of the defendant occupying apartment No. 1020 Medosh Court in said Valley Homes Project; that Apartment No. 1020 Medosh Court is a self-contained one-family apartment with private entrance reached by use of an outside stairway.” Furthermore, in plaintiff’s petition it is alleged that “he resided with his parents, who were and now are tenants of the defendant occupying” that apartment as so described. *137 Cf. Ripple v. Mahoning Natl. Bank, 143 Ohio St., 614, 619, 56 N. E. (2d), 289.
In 51 Corpus Juris Secundum, 518, Section 11, it is said:
“While the presumption of a relationship of landlord and tenant arises from an occupancy of land under an agreement with the owner to pay rent or accompanied by the payment of rent, it is not essential that there be a definite agreement for such payment, and the relationship may arise, although the occupant refuses to agree on any particular amount or to pay any sum whatever, if he occupies with the owner’s permission and with the understanding that rent would be demanded.”
Here there was an occupancy of the premises involved by plaintiff’s parents under an agreement with defendant to pay rent and accompanied by the payment of rent. It is undisputed that plaintiff’s parents occupied the premises with defendant’s permission and with the understanding that rent was to be paid and would be paid.
In 32 American Jurisprudence, 27, Section 2, it is said:
“The relation of landlord and tenant is created by contract, either express or implied, by the terms of which one person designated ‘tenant’ enters into possession of the land under another person known as ‘landlord.’ A tenant, including a tenant for years, is an occupant who has not only an interest in land, but also some estate, be it ever so little, such as the estate of a tenant at will. He is ‘one who occupies the premises of another in subordination to that other’s title and with his assent express or implied’ * * *. There is authority to the effect that presence or absence of possession of the premises is a distinguishing factor between the relationship of landlord and tenant *138 and that of lessor and lessee — that is, the one relation is referable only to the contract, and the other to both the contract and the change in possession of the premises. Thus, it has been said that the lessee is not a tenant until he enters into possession. Usually, however, the word ‘landlord’ as employed in legal parlance, as well as in ordinary usage, means the same as ‘lessor,’ and the word ‘tenant’ the same as ‘lessee.’, ”
Here, defendant gave plaintiff’s parents possession of the premises under a written contract providing therefor. Obviously; plaintiff’s parents were occupying the premises in subordination to the title of defendant thereto and with defendant’s express assent. Their relationship was referable not only to an express contract but to the change in possession of the premises.
In 32 American Jurisprudence, 31, Section 5, it is said:
“A license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to. do the act, and no further, whereas a lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms.
“Whether an instrument is a license or a lease depends generally on the manifest intent' of the parties gleaned from a consideration of its entire contents. Even though a contract purports to be a ‘license,’ if it is strictly within the definition of a lease, it will be construed as such, and not as a license.”
Here, the agreement between plaintiff’s parents and defendant gave the former the right of possession and the exclusive occupation thereof for all purposes not prohibited, — not merely the occupation of the premises for a particular purpose. As stated in Linwood Park Co. v. Van Dusen, 63 Ohio St., 183, 197, 58 N. E., 576, the parties to a lease have the ‘ ‘ right to make any re *139 strictions upon the mode of enjoying the leased property which they might agree upon, provided that such restrictions should not be contrary to public policy.”
In other words, restrictions on the use of property by one who occupies it for residential purposes for a consideration and with the consent of the owner thereof do not ordinarily justify the inference that such occupier is not a tenant of that property.
In 28 American Jurisprudence, 544, Section 9, it is said :
“There is a distinction between ‘apartment houses’ and ‘apartment hotels’ so-called. An apartment house may be generally defined as a building arranged in several suites of connecting rooms, each suite designed for independent housekeeping, but with certain mechanical conveniences such as heat, light, or elevator service furnished in common to all the occupants of the building. An apartment hotel is generally understood to apply to buildings which contain nonhousekeeping apartments, wherein no cooking facilities are provided and the proprietor maintains a restaurant for the convenience of his guests and furnishes other service to them. An apartment house is clearly not a hotel, each apartment therein being regarded as a separate dwelling of which its occupant is the tenant. Also, the fact that a particular establishment is called an apartment hotel and operates under the plan above outlined does not in all instances bring it within the definition of an inn or hotel * * V’
Involved here is a suite of rooms designed for independent housekeeping with certain mechanical conveniences such as the utilities provided for by the defendant. Obviously the unit occupied by plaintiff’s family was a separate dwelling of which plaintiff’s parents, as occupants, were tenant's.
In Ripple v. Mahoning Natl. Bank, supra, it was contended, as here, that the relationship of landlord *140 and tenant did not exist. The facts in that case, tending to indicate nonexistence of that relationship, were mnch stronger than the facts in the instant case. In that case, there was not only a retention of control by the owner for the purpose of repairing, as in the instant case, but also for the purpose of doing daily janitor work. In the instant case, there was no retention of control by defendant for any such purpose of cleaning up the dwelling occupied by plaintiff’s parents.
In paragraph 1 of part I of the terms and conditions of occupancy of the registration certificate, it was recognized that plaintiff’s parents were to use the “dwelling as a home.” It is often said that a man’s home is his castle. At any rate, one admittedly has a very considerable control over who shall be permitted to come into that home. See State v. Peacock, 40 Ohio St., 333.
Without further laboring the question, it is apparent that the relationship between defendant and plaintiff’s parents was, as a matter of law, that of landlord and tenant.
The next question raised is whether the agreement between defendant and plaintiff’s parents provided for retention of sufficient possession and control of the premises in defendant to justify the recognition of liability of defendant to plaintiff for negligence in maintenance of the premises leased to plaintiff’s parents.
Unlike in Neckel v. Fox, 110 Ohio St., 150, 143 N. E., 389, the facts in the instant case are not so meagerly stated as to prevent determination of the' specific character of the possession and control which defendant had.
Under the so-called registration certificate, which represented the agreement with respect to the occupation of this dwelling by plaintiff’s parents, no one *141 could enter that dwelling without their permission, until their occupancy was terminated in accordance with the conditions specified in paragraph 5 of part I thereof, except as provided in paragraph 6c of part 1, which reads:
“c. Entry. The occupant shall permit the duly authorized representatives of CMHA to enter the dwelling without notice during reasonable hours when necessary in order to provide efficient service (repairs, improvements, etc.).”
In Brown v. Cleveland Baseball Co., 158 Ohio St., 1, 106 N. E. (2d), 632, paragraphs two and three of the syllabus, which were concurred in by all the members of this court, read:
“2. One having neither occupation nor control of premises ordinarily is under no legal duty to an invitee of another with respect to the condition or use of those premises.
“3. In order to have the occupation or control of premises necessary to impose such legal duty with respect to the condition or use of those premises, one must ordinarily have the power and the right to admit such individuals to the premises or to exclude them from the premises.”
Certainly, defendant had no right to admit anyone to the premises except its representative under certain limited conditions. No representative of defendant is seeking recovery in the instant case. Although the agreement between defendant and plaintiff’s parents might under some circumstances have .restricted plaintiff’s parents to some slight extent with respect to the exercise of their right to admit individuals to the premises, those restrictions were clearly of a reasonable and very limited nature. See paragraphs 6d of part I, and 3 and 5 of part II of registration certificate. Certainly, defendant could not, except in accordance with paragraph 6c of part I of that agree *142 ment, authorize admittance of anyone into this dwelling while occupied by plaintiff’s parents pursuant to that agreement. The only ones who could authorize such admission were plaintiff’s parents. Furthermore, their right to exclude others from the premises was limited only by paragraph 6c of part I of the registration certificate.
This court has consistently held that neither reservation by a landlord of a right nor even his agreement to make repairs justifies a finding that such landlord has retained occupation or control of the premises. Cooper v. Roose, 151 Ohio St., 316, 85 N. E. (2d), 545; Berkowitz v. Winston, 128 Ohio St., 611, 193 N. E., 343; Ripple v. Mahoning Natl. Bank, supra.
With respect to these holdings it was said in Cooper v. Roose, supra, 322:
“Decisions in other jurisdictions must be analyzed with some care because of the fact that they have frequently been rendered by courts which have held contrary to the holdings of this court, in cases similar to Berkowitz v. Winston, supra, Ripple v. Mahoning Natl. Bank, supra, and Sinton v. Butler [40 Ohio St., 158].”
It may be observed that nowhere in the agreement with respect to occupancy of the premises in the instant case did defendant agree to make repairs. Furthermore, there is no allegation in the petition nor was anything said in the opening statement to justify an inference that plaintiff’s parents had requested or been refused permission to repair the steps upon which the plaintiff fell. See Ryan v. Boston Housing Authority, 322 Mass., 299, 77 N. E. (2d), 399.
Appellants rely upon Stackhouse v. Close, 83 Ohio St., 339, 94 N. E., 746. In that case, the landlord participated in and directed and supervised the alteration of the part of the premises claimed to be defective. That case was recently considered by this court in Witherspoon v. Haft, 157 Ohio St., 474, 106 N. E. *143 (2d), 296, and Brown v. Cleveland Baseball Co., supra. In the Haft case, the defendant had actually erected the dangerous portion of the premises at a time so close to the injury of the plaintiff caused by that dangerous portion that the occupier of the premises had not had a reasonable opportunity to learn of the potential danger. Unlike in Stackhouse v. Close, supra, and in Witherspoon v. Haft, supra, the defendant in the instant case did not do anything with respect to the part of the premises which was responsible for the injuries for which recovery is sought. Furthermore, in the instant case, plaintiff’s parents, the lessees, admittedly knew all about the defective condition of these steps for some time before plaintiff’s injuries. See Witherspoon v. Haft, supra, 485. The Brown case involved an instance where, unlike in the instant case, the party, claiming to be lessor, had retained and exercised the power and right to admit individuals to and exclude them from the premises.
The steps on which plaintiff fell in the instant case led only to the dwelling occupied by plaintiff’s family. Notwithstanding the fact that the steps rested upon ground in the possession and control of defendant, they constituted a part of the premises in the occupation and control of plaintiff’s parents. Cooper v. Roose, supra, 318, 319.
Appellants refer to certain sections of the statutes, providing for organization of a public housing authority and especially Sections 1078-30, 1078-34 and 1078-42, General Code, as indicating that one of the purposes of providing for such a housing authority is to provide “safe * * * accommodations to families of low income.” The argument is that these statutory provisions indicate an intention of the General Assembly to impose liability on such authorities for negligence in failing to provide safe accommodations. We believe that no such inference of a legislative inten *144 tion is justified. If the General Assembly had intended to impose upon the taxpayers a greater burden, in providing for the housing accommodations leased to families of low income, than that imposed generally on landlords, in addition to the burden of providing such low rental accommodations .partly at public expense, that intention would have been clearly expressed.

Judgments affirmed.

Weygandt, C. J., Matthias, IIart and Zimmerman, JJ., concur.
Middleton, J., dissents.
Stewart, J., not participating.