COLLOVA et al.

v.

MATOUSEK; Consolidated Management, Inc. et al., Appellants;
Cleveland Builders Supply Company et al., Appellees.

[Cite as *Collova v. Matousek* (1993), 85 Ohio App.3d 440.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61348.

Decided Feb. 17, 1993.

*Landskroner & Weaver Co., L.P.A.,* and *Lawrence Landskroner,* for Anthony Collova.

*Walter, Haverfield, Buescher & Chockley, Charles T. Riehl, Kenneth Zirm* and *Charles R. Olsavsky, Jr.,* for appellants Consolidated Management, Inc. and Andover.

*Lovinger, Wolkov & Schwartz* and *Leonard A. Wolkov; Kaufman & Cumberland* and *Kelly Dowling Stimpson,* for Mildred Matousek.

*Reminger & Reminger* and *George S. Coakley,* for appellee Boyas Excavating, Inc.

*Buckingham, Doolittle & Burroughs* and *Donald B. Leach, Jr.,* for appellee Cleveland Builders Supply Co.

---

PATRICIA A. BLACKMON, Judge.

This is an appeal by Consolidated Management, Inc. and Andover Club Apartments—third-party plaintiffs-appellants, hereinafter "Consolidated" and "Andover"—from a judgment of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of Boyas Excavating, Inc. and Cleveland Builders Supply Co.—third-party defendants-appellees, hereinafter "Boyas" and "Cleveland Builders." Having reviewed the record and the legal arguments of

the parties, we reverse and remand this case for further proceedings. The apposite facts follow.

Consolidated was named as a defendant in the complaint that initiated this case. The plaintiffs, in that original complaint, were the city of Garfield Heights and the Garfield Heights Fire Chief, Anthony Collova. The original complaint sought a restraining order that would prohibit another defendant, Mildred Matousek, from permitting the continued migration of methane gas from her property onto that of Andover, an apartment complex owned by Consolidated. The complaint also sought to restrain Consolidated from entering or remaining in certain of the apartments within Andover.

In a third-party complaint filed by Consolidated, Cleveland Builders and Boyas were named as third-party defendants. The essence of the third-party complaint was that Cleveland Builders, because it leased its property to be used as a sanitary waste landfill operation, participated in the creation and maintenance of a nuisance on its property, rendering it liable to Consolidated for the methane gas migration onto its property.

In January 1991, the trial court granted Cleveland Builders' motion for summary judgment. The motion was premised on the position that even though Consolidated was the owner of the property upon which some sections of the Rockside Landfill were operated, Consolidated was a landlord who had leased the premises to other companies to operate the landfill and was therefore a landlord out of possession and not liable. Shortly thereafter, on its own motion, the trial court granted Boyas' motion for reconsideration and summary judgment.

Consolidated and Andover assert a sole assignment of error in support of this appeal. It states:

"The trial court erred by concluding that the Rockside Landfill was not an absolute nuisance as a matter of law and therefore granted Cleveland Builders Supply Company's and Boyas Excavating, Inc.'s motions for summary judgment."

This assignment of error raises two interrelated issues: whether a genuine issue of a material fact exists establishing that Cleveland Builders was a landlord out of possession and control of the premises and thus not responsible for the acts of its tenants and whether a genuine issue of a material fact exists establishing that Rockside Landfill was an absolute nuisance. In resolving both issues, we conclude that genuine issues of material fact exist and summary judgment was improper. We turn our attention first to the landlord's liability.

The general rule regarding the correlation between a landlord's liability and possession and control of the premises is well stated in *Hendrix v. Eighth & Walnut Corp.* (1982), 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149. In that case the court stated:

"In Ohio, the commercial lessor's liability is governed by traditional common law principles. Under the common law, one having neither possession nor control of premises is ordinarily not liable for damages resulting from a condition of the premises. [Citations omitted.] The lessor who does not retain the right to admit or exclude others from the premises has generally not reserved the degree of possession or control necessary to impose liability for the condition of the premises." *Id.* at 207, 1 OBR at 232, 438 N.E.2d at 1151.

■ Cleveland Builders enumerated a listing of factors, extrapolated from a number of cases, that a court should consider in analyzing whether the lessor is in control and possession of the defective premises. Because this court deems them an appropriate set of criteria for analyzing the question of possession and control, they will be utilized in the instant case.

The first factor is whether Cleveland Builders occupied some part of the leased property. The second is whether Cleveland Builders had the right to admit or exclude persons from the premises. The third factor is whether, under the terms of the lease, responsibility for damages caused by the operations on the premises was delegated to Cleveland Builders in part or in whole. The fourth factor to consider is whether Cleveland Builders participated in the problem which was responsible for the injuries for which recovery has been sought.

■ The first factor, as it is applied to the instant appeal, leads to the conclusion that Cleveland Builders was permitted to occupy some part of the leased premises. Cleveland Builders was granted "an absolute right to use the landfill at no charge for the dumping of such refuse as Cleveland Builders Supply Company develops in connection with its existing business or such other business (other than a landfill operation) as it or a wholly owned subsidiary might operate." Lease at Paragraph 11.

On the basis of a review of the lease in contemplation of the second factor, Cleveland Builders did retain some rights or responsibilities as it relates to the admission or exclusion of persons from the premises. It was permitted to bar deliveries in the event that certain payments contained within the lease were not made.

The third factor is whether under the terms of the lease Cleveland Builders was delegated some of the responsibility for damages caused by the operations on the premises either in part or in whole. The express terms of the lease held Cleveland Builders harmless for all legal and other expenses, judgments, and settlements incurred in defending and arising out of a lawsuit that resulted from the operation of the premises as a landfill. In addition, the lease places the regulatory compliance squarely with the lessee and not with Cleveland Builders. The lease requires that the lessee cease operation of the landfill in the event of a

dispute relative to compliance with the rules and regulations of a government or administrative agency.

The fourth factor to be considered in the equation of whether the lessor was in control or possession of the defective premises is whether Cleveland Builders participated in the problem that allegedly caused the injuries for which damages have been sought. The record is fairly clear that Cleveland Builders was interested and apprised of the problems with the landfill. However, the extent to which Cleveland Builders acquiesced in the ongoing problems, the amount of dumping by Cleveland Builders, and the question of how much Cleveland Builders knew or should have known about the developing problems are all examples of the factual issues implicit in the question of actual participation or contribution to the injuries for which recovery is sought.

A careful review of these factors relating to possession or control would suggest that absent a nuisance analysis, Cleveland Builders sufficiently insulated itself from liability for the operation of the landfill within the written terms of the lease. The lease, in certain terms, provides that the lessee has the responsibility to be in compliance with all local, state, and federal regulations pertaining to the operation of the landfill. The lease, in certain terms, provides that Cleveland Builders would be held harmless for all legal and other expenses, judgments, and settlements incurred in defending and arising out of a lawsuit that resulted from the operation of the premises as a landfill. These provisions, absent a nuisance analysis, clearly insulate Cleveland Builders as a landlord from any liability for the landfill's operation by the lessee.

■ The second issue raised by this assigned error is whether the Rockside Landfill is an absolute nuisance. Undoubtedly, if there is such a genuine issue of material fact, then Cleveland Builders and Boyas should not have been granted summary judgment as a matter of law.

The law governing a landlord's liability for absolute nuisance is contained in *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724, and developed in its progeny. *Taylor* at paragraph two of the syllabus states:

"Absolute nuisance, for which strict liability or liability without fault is imposed by law, may be defined as * * * the collecting and keeping on one's premises anything inherently dangerous or likely to do mischief, if it escapes, which, escaping, injures another in the enjoyment of his legal rights."

This court accepts Cleveland Builders' position that *O'Day v. Shouvlin* (1922), 104 Ohio St. 519, 136 N.E. 289, has a qualifying impetus on *Taylor* as stated at paragraph one of the syllabus:

"If the business is lawful, and the facilities employed are not inherently noxious or dangerous, but are operated by means of modern appliances in the usual and

ordinary method, such business is not a nuisance *per se,* nor is its owner liable as an insurer."

As these rules of absolute nuisance and landlord liability pertain to Cleveland Builders, a genuine issue of material fact exists whether Cleveland Builders is liable under both the *Taylor* and *O'Day* standards. Reasonable minds could no doubt reach different conclusions about whether collecting and keeping the waste items contained in the Rockside Landfill was inherently dangerous and/or likely to do mischief.

Furthermore, reasonable minds could no doubt reach different conclusions about whether the facilities employed at the Rockside Landfill were inherently noxious or dangerous and whether the Rockside Landfill was operated by means of modern appliances in the usual and ordinary method. The Rockside Landfill contained garbage, rotten food, disposable diapers, and various other forms of waste. These various forms of waste can and often do cause problems like bacteria, rodents, and the other waste items cited by Consolidated and Andover. Facilities such as these could have been deemed as a factual matter to be inherently noxious or dangerous. Likewise, it may be concluded that the Rockside Landfill was operated by means of modern appliances in the usual and ordinary method. After a jury makes these factual decisions based on all of the evidence, a determination could then be made by them as to whether the Rockside Landfill was an absolute nuisance under *Taylor* and *O'Day.* Since under each standard, while reviewing the evidence in a light most favorable to appellants, reasonable minds could reach different conclusions on this evidence, summary judgment was improper. A number of genuine issues relating to material facts on the question of absolute nuisance existed. Summary judgment was therefore improper as it relates to Cleveland Builders.

With regard to Boyas Company, there also exists genuine issues of material fact pertaining to its participation and involvement in the creation of the nuisance. Boyas argues that it never operated the landfill. Appellants argue that Boyas was involved in the operation. The question of whether Consolidated presented sufficient evidence as to whether Boyas performed excavating, quarrying, and demolition services at the landfill in a fashion that created or perpetuated a nuisance is one for the jury. Boyas' summary judgment should likewise have been overruled.

*Judgment reversed*
*and cause remanded.*

JAMES D. SWEENEY, J., concurs.

DYKE, C.J., dissents.

DYKE, Chief Justice, dissenting.

I must respectfully dissent from the majority opinion which holds that genuine issues of material fact remain with respect to whether the Rockside Landfill is an "absolute nuisance."

My concern with the majority opinion is threefold.

First, the opinion disregards the significant distinction between the doctrines of absolute and qualified nuisance.

Second, the opinion focuses on the current state of the landfill rather than focusing on the past conduct of the alleged operator and lessor or reviewing Consolidated's and Andover's brief in opposition for evidence of negligence.

Third, the opinion is legislative in result in that it promotes an extension of the extreme penalty of absolute liability to the operation of a landfill, an enterprise which has never been held to be inherently dangerous or extrahazardous.

It is clear from the documents submitted to the trial court that Consolidated/Andover complained, argued and opposed Cleveland Builders' and Boyas' motions for summary judgment on the theory that the Rockside Landfill was an absolute nuisance. On appeal, Consolidated/Andover advanced the same theory of liability, specifically stating so in the language of its single assignment of error. Consequently, the narrow issue before the trial court and this court was whether, under the laws of Ohio, the operation of a landfill is an absolute nuisance to which strict liability applies.

A review of the Consolidated/Andover's appellate brief reveals that it was relying on the fourth prong of a four-part definition of "absolute nuisance" fully stated below:

"Absolute nuisance, for which strict liability or liability without fault is imposed by law, may be defined as a distinct civil wrong arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawfully doing of anything or the permitting of anything under one's control or direction to be done, which results in injury to another; or the collecting and keeping on one's premises anything inherently dangerous or likely to do mischief, if it escapes, which, escaping, injures another in the enjoyment of his legal rights." *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724, paragraph two of the syllabus.

This prong clearly contemplates the keeping on one's premises anything that is "inherently dangerous." The opinion goes on to explain that the doctrine embodied in the fourth prong of this definition evolved from the early case of *Rylands v. Fletcher* (1868), L.R. 3 H.L. 330, 37 L.J.EX. 161, 19 L.T.REP. 220, 33 J.P. 70, but specifically notes that this rule has been narrowed in scope and "in proper cases, applied to situations involving the maintenance of artificial reservoirs for the collection of water * * *; the storing or use of dangerous combustibles, such as dynamite, nitroglycerine, gun powder, etc.; blasting operations * * * and trespasses due to the escape of wild animals * * *." *Taylor* at 435, 28 O.O. at 373, 55 N.E.2d at 728. The *Taylor* court then specifically lists those cases in which the Supreme Court of Ohio applied this rule. In each instance, the defendant's conduct or the activity involved possessed characteristics which were held to be inherently dangerous or hazardous. The activities involved included the handling of explosives; the explosion of an unguarded, unexploded bomb in a public park and several instances of blasting operations. *Id.* at 435, 28 O.O. at 373, 55 N.E.2d at 728.

Two years after *Taylor*, the Supreme Court of Ohio in *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, also differentiated between an absolute nuisance, to which strict liability applies, and the maintenance of a qualified nuisance, which requires the proof of negligence. In *Metzger*, the court described absolute nuisance in a case which involved the handling of nitroglycerine and described a qualified nuisance in a case which involved an explosion during the negligent operation of a sawmill.

Under *Taylor* and *Metzger*, the operation of a sawmill, like the operation of a landfill, is not an inherently dangerous or an extrahazardous activity.

Reasonable minds can come but to one conclusion under the facts and law presented by Cleveland Builders' and Boyas' motions for summary judgment, that being that the operation of a landfill is not an absolute nuisance. No case law can be located which holds the operation of a landfill to be an absolute nuisance. There are sound public policy reasons for the absence of such holdings, for the imposition of absolute liability upon the enterprise of providing landfills would operate to deter even the most responsible individuals from pursuing the important field of waste management.

The legislature may, in the future, deem the operation of landfills to be an inherently dangerous or extrahazardous activity, but unless and until it does, the licensed and regulated storage of garbage in the ground does not, in my opinion, constitute an absolute nuisance.

Consolidated/Andover and other similarly situated plaintiffs have much to gain by stating their claims in terms of absolute nuisance. It relieves them of the burden of proving negligence. The self-serving stratgies of litigants and the

future implications of such strategies are also of concern when reviewing these complex matters. It should be noted that the trial court visited the issue of absolute nuisance twice and in granting summary judgment stated in its journal entry that the landfill was a qualified nuisance and that it found no evidence of negligence.

For the foregoing reasons, I would affirm the judgment of the trial court which granted summary judgment in favor of Cleveland Builders and Boyas on the issue of absolute nuisance.